E. HALL DOWNES and Another, Plaintiffs, *v.* ELY CULBERTSON and Another, Defendants.

Supreme Court, New York County, September 13, 1934.

*Burlingame, Nourse & Pettit* [*Arthur Pettit* and *Russell G. Rogers* of counsel], for the plaintiffs.

*Ralph J. Leibenderfer* [*Alfonse F. Spiegel* of counsel], for the defendants.

HARRY D. NIMS, Referee.  The individual parties to this action are teachers and writers on the game of bridge.  " Bridge Publications, Inc.," and " The Bridge World, Inc.," are publishers.

About 1919 Culbertson began to study contract bridge.  His emphasis was on methods of play known then or later as " approach forcing," which, due largely to Culbertson's own efforts and encouragement, have become known also as the Culbertson system. In 1927 or 1928 he published " The Teachers Lesson Sheets on the Culbertson System of Contract Bridge."  In September, 1930, he published his first book on the subject, " Contract Bridge Blue Book."  He has published articles on the game in " The Bridge World," a periodical of which he is editor in chief, published by the corporate defendant.

In March, 1932, defendants contracted for printing of playing cards which they advertised, beginning in April, 1932, as " Culbertson's Own Self-Teaching Playing Cards." These words were printed on the package and on the ace cards.

On April 2, 1932, there was published a book written by Downes, entitled: " Contract Bridge Self-Teacher. Culbertson System. As taught by E. Hall Downes." It was published by one Bloom, doing business as the " Contract Bridge Self-Teacher Publishing Co." It contained forty-eight pages, eight and one-half by eleven inches, bound in a cover colored yellow and red; this general get-up possibly being then new in publications on contract bridge. Its purpose was to instruct beginners and non-experts. Downes claims to have originated the method of teaching set out in the book, which was to print problems or drills on the right-hand page, and on the left the principles involved. The correct answers to the problems appeared in the back of the book. The book was copyrighted in the name of Downes. A second edition was published on May 23, 1932.

On May 9, 1932, Downes received a telegram signed " Legal Department, The Bridge World, Inc.," demanding immediate discontinuance of the manufacture and distribution of this book on the ground that the use of Culbertson's name and of copyrighted material was unauthorized, and threatening legal proceedings. This telegram was followed by a letter of similar nature from an attorney representing the defendants.

Plaintiffs thereupon changed the title of Downes' book so that it read: " Contract Bridge Self-Teacher. Approach-Forcing Commonly Called Culbertson System. As Interpreted and Taught by E. Hall Downes." Also the appearance of the book was changed by printing sample hands and other matter on the cover. These changes were incorporated in the third edition published on October 1, 1932, by " Bridge Publications, Inc.," to which Downes had assigned the right to publish his literary output for two years. The fourth and fifth editions of the book, similar in appearance to the third, were published in November, 1932, and March, 1933.

In May, 1933, Bridge Publications, Inc., applied for registration in the United States Patent Office of " Self-Teacher " as a trademark for a publication. Registration was granted under the act of March 19, 1920.

On April 1, 1933, " The Bridge World " published an announcement of " ' Culbertson's (Own) Contract Self-Teacher,' by Ely Culbertson himself, issued to meet the demand of the Bridge-playing public for an accurate and authorized self-teaching book on the Culbertson System." This was followed up by an advertise-

ment by " The Bridge World " in the *Retail Bookseller* headed " Warning to the Trade: Beware of unauthorized and inaccurate books which offer ' Culbertson ' under various disguises. Satisfy your customers by stocking only genuine Culbertson Bridge books — by Ely Culbertson himself, or published by The Bridge World, Inc. Below is the only authorized Culbertson ' Self-Teacher.' " Copies were mailed to about five hundred retail booksellers.

The book itself, published on May twenty-ninth, is identical in size with the Downes Self-Teacher. It contains the same number of pages as the fifth edition of the Downes book, which edition had appeared two months before. Like the Downes book, the color scheme is yellow and red, though of somewhat different shades. In plan and typography plaintiffs' and defendants' books are closely similar though not identical. It follows the general plan of Downes' book, giving on the right-hand page problems or drills, and on the left-hand page the principles. The correct answers to the problems are placed in the back of the book. It uses boxes and other means of emphasis, also used by Downes. It is like the Downes' book also in that it carries sample hands on the front cover and a two-column arrangement on the back cover. The words " Culbertson's Own " are used on the cover. The name " Culbertson's " is in large type and the word " Own " is printed in red. At the bottom of the cover appears the phrase " By Ely Culbertson, himself." On the cover appears " The only authorized Culbertson's Self-Teacher " and " 1933 Culbertson System." Inside the cover is printed: " Warning: This authorized ' Culbertson's Own Contract Bridge Self-Teacher ' is the only self-teaching manual on the Culbertson (approach forcing) system written by Ely Culbertson, the originator and owner of the system, himself, and is fully protected by copyright. Reproduction in whole or in part is strictly prohibited."

Publication of this book was followed up by a statement in " The Bridge World " for June, 1933, reading in part as follows: " ' Culbertson's Own Contract Bridge Self-Teacher,' just published, gives authentic and reliable self-teaching lessons and drills on the Culbertson System of 1933. Beautifully printed, this large book is just the thing for any member of the family who has not been able to master Contract Bridge up to now. But to be sure you get the book by Ely Culbertson *himself*, and not some other book purporting to be on the Culbertson System, but written by someone else. * * *

" Legal action is contemplated by Mr. Culbertson, against E. Hall Downes for his ' Self-Teacher ' on the Culbertson System. In a recent statement, Mr. Culbertson explained his attitude as follows:

" ' Although it is my proud boast that to the Bridge players of the world ' Culbertson ' has become a common name for ' Contract Bridge,' the name of ' Culbertson ' is nevertheless still my own. I worked tirelessly for more than twelve years to perfect the Culbertson System, sometimes called the Approach-Forcing System, and I ' sold ' it to Bridge players everwhere because it is the *winning* system and because it keeps pace with the newest developments in the game. Therefore, when anyone comes along who tries to ' cash in ' on the popular appeal of my name, or by actually selling my system, I am only being a good business man if I punish the trespasser. I do this in two ways: first, by bringing legal action to enjoin the use of my name for profit and, second, by entering into competition with the trespasser in his particular field and selling my own work, which is ever so much better, since if anyone knows the Culbertson System it must be Ely Culbertson himself. The Bridge player not only gets more for his money, but he is sure of getting the genuine article. Though purists of English style have sniffed at my emphasis on Culbertson's Own Summary, by Ely Culbertson Himself, they need but a moment's reflection to see the urgent necessity for it. Two suits have been instituted in the past, and another is now contemplated, for gross violation of my property rights in my own name and in the system of Contract Bridge which I invented. I am sure that any fair-minded person will agree that after a man has devoted years to building up something people want, he is entitled to the fruits of his labor."

On June 12, 1933, Downes filed the complaint in this action asking an injunction restraining defendants from using the term " Self-Teacher " in the title of a book or publication; from using the method of teaching bridge " invented and originated by the plaintiff E. Hall Downes " in any publications and from simulating the literary plan, style and arrangement of Downes' contract bridge self-teacher; from claiming ownership of either the approach-forcing or the Culbertson system of bidding in contract bridge; from claiming that Culbertson's Self-Teacher is the only authorized self-teacher of the Culbertson system, or that Culbertson is the only person authorized to write any book explaining or interpreting such system and from stating that the publication of such a self-teaching book by the plaintiffs is unauthorized, improper, unlawful or in violation of any rights of the defendants. Damages are claimed. The answer includes no counterclaim. A separate defense alleges unfair competition by plaintiffs on the ground that the title of the Downes Self-Teacher and its contents represent that their books are the composition of Culbertson, or authorized and approved

by him. A second separate defense alleges the use of Culbertson's name for advertising purposes in the State of New York without his written consent.

1. The Downes Self-Teacher is a book, not a periodical, and its title, therefore, is descriptive and cannot be a technical trade-mark. (*Atlas Mfg. Co.* v. *Street & Smith*, 204 Fed. 398, 404; *Selig Polyscope Co.* v. *Unicorn Film Service Corp.*, 163 N. Y. Supp. 62.) The registration of the words " Self-Teacher " under the act of 1920 is not even *prima facie* evidence of ownership; it is important here only in that it estops plaintiffs from denying that the term " Self-Teacher " is descriptive. (*Matter of Pitney-Bowes Postage Meter Co.*, 146 Manuscript Decisions [Patent Office], 173; 14 Trademark Reporter, 346; affd., 6 F. [2d] 717; *Matter of Reo Motor Car Co.*, 1925 C. D. 137; affd., 16 F. [2d] 349.) Any trade-mark rights that plaintiffs, therefore, may have in this term must be based upon the fact that this term has acquired a secondary meaning indicating a product of Bridge Publications, Inc.

The record is devoid of evidence of secondary meaning, that is, of evidence showing that over some period of time plaintiffs were exclusive users of the words " Self-Teacher " on a bridge publication, and that as a result of such exclusive use these words have become and now are associated in the minds of the bridge-playing public with a single author or publisher. Such evidence is necessary to prove that their use on a book by an author other than Downes " without more would have all the effect of a falsehood." (*Herring-Hall-Marvin Safe Co.* v. *Hall's Safe Co.*, 208 U. S. 554, 559; *Chickering* v. *Chickering & Sons*, 215 Fed. 490, 494; *Barton* v. *Rex Oil Co.*, 2 F. [2d] 402, 405, 406; *Standard Paint Co.* v. *Rubberoid Roofing Co.*, 224 Fed. 695; *Bayer Co.* v. *United Drug Co.*, 272 id. 505, 509.) The existence of secondary meaning also is contradicted by the sale of " Culbertson's Own Self-Teaching Playing Cards " about the time when the Downes Self-Teacher was newly published.

Without proof of secondary meaning of " Self-Teacher," the testimony that the clerks at two bookshops, in response to a request for a " Contract Bridge Self-Teacher," offered the Culbertson Self-Teacher, becomes meaningless. In so far as this action involves trade-mark rights and their infringement, it fails.

2. Downes claims that he invented a method of teaching bridge, or an arrangement of material, and that his book embodies this method or arrangement, and asks that defendants be enjoined from using this method or arrangement. There is inconsistency between this claim and plaintiffs' denial that defendants have any rights in a system of playing contract bridge. Neither the Culbertson system nor Downes' method of teaching nor his arrange-

ment of material is a subject of property rights. Each may be freely used and copied. (*Baker* v. *Selden*, 101 U. S. 99; *Griggs* v. *Perrin*, 49 Fed. 15; *Guthrie* v. *Curlett*, 36 F. [2d] 694.) Plaintiffs have no exclusive rights in the size of their book, or in the number of pages, in colors, typography or descriptive title, in the absence of evidence that these features have become so associated with the plaintiffs in the public mind and that they are now used to distinguish plaintiffs' book from all others. Such evidence is lacking.

Defendants were familiar with the Downes book and may have used it as a model. That in itself is not ground for relief unless the Culbertson book was so designed and printed that purchasers of bridge publications, who previously had seen the Downes " Self-Teacher," now seeing the Culbertson " Self-Teacher," would reasonably believe it to be the same book or a new edition of that same book or possibly a new book written by the same author or put out by the same publisher. (*Munro* v. *Tousey*, 129 N. Y. 38, 42; *Atlas Mfg. Co.* v. *Street & Smith*, 204 Fed. 398, 404; *Lare* v. *Harper & Bros.*, 86 id. 481; *Estes* v. *Worthington*, 31 id. 154; *Enoch Morgan's Sons* v. *Troxell*, 89 N. Y. 292.) Unfair competition in the sense of passing off by simulation of the get-up of plaintiffs' book has not been proved.

3. Plaintiffs argue, however, that defendants simulated plaintiffs' book as a part of a scheme, by use of threats and misstatements, to make the public believe that plaintiffs were violating defendants' rights.

Threats of prosecution against a competitor, his customers or the trade, made not in good faith but to intimidate and coerce, and false statements, fraudulent advertising and deceptive claims to exclusive rights constitute unfair competition and will be enjoined. (*Price-Hollister* v. *Warford Corp.*, 18 F. [2d] 129, 131; *Maytag Co.* v. *Meadows Mfg. Co.*, 35 id. 403, 408; *Moguel S. S. Co.* v. *McGregor*, [1889] L. R. 23 Q. B. 598, 625; *Allen Mfg. Co.* v. *Smith*, 224 App. Div. 187, 190; *Old Investors & Traders Corp.* v. *Jenkins*, 133 Misc. 213; affd., 225 App. Div. 860; *McAllister* v. *Stumpp & Walter Co.*, 25 Misc. 438; *Fish Bros. Wagon Co.* v. *La Belle Wagon Works*, 82 Wis. 546; 52 N. W. 595; *Fish Bros. Wagon Co.* v. *Fish Bros. Mfg. Co.*, 87 Fed. 203; affd., 95 id. 457; *Merriam Co.* v. *Ogilvie*, 159 id. 638.)

Defendants admit that they have no exclusive or proprietary rights in the approach-forcing system and that in so far as their advertising or the published statements made claim to such ownership they went too far. This system is an idea, property in which can be secured neither by copyright, which protects only means of its expression, nor by patent, which would protect only the means

of reducing it to practice. (*Holmes* v. *Hurst*, 174 U. S. 82, 86; *Dymow* v. *Bolton*, 11 F. [2d] 690.) The public has the right to use the system and equally to use the name " Culbertson System," by which it is sometimes known. (*Goodyear Co.* v. *Goodyear Rubber Co.*, 128 U. S. 598; *Singer Mfg. Co.* v. *June Mfg. Co.*, 163 id. 169; *Merriam* v. *Ogilvie*, *supra*, 640; *Tinker* v. *Patterson Dental Supply Co.*, 287 Fed. 1014; *Liebig's Extract of Meat Co.* v. *Walker*, 115 id. 822; *Brooten* v. *Oregon Kelp Ore Products Co.*, 24 F. [2d] 496.)

Whether defendants' use of the word " authorized " or " only authorized " is unfair depends on how the average member of the purchasing public and trade would be likely to understand the words as used by defendants. The word " authorized " as defined in the Oxford Dictionary means " possessed of authority, acknowledged as authoritative; thoroughly established; highly esteemed * * * legally or duly sanctioned or appointed." If the words " authorized " or " only authorized " were used so as to inform the public that defendants' self-teacher is the only bridge self-teacher authorized by Culbertson, then their use would be accurate and fair. As used by defendants, however, they imply that no book on the system and no self-teacher of it may be published without authorization by Culbertson and that, therefore, publications lacking such authorization are unlawful or defective. Such use is unfair and should be enjoined.

Any doubt as to the meaning which defendants intended to convey by their use of terms such as " only authorized " is lessened by the threats and warnings which accompanied these acts and which clearly imply a claim to ownership or, at least, to control over the system and its use. Defendants first threatened plaintiffs immediately after publication of the first edition of the Downes book. Those threats were not published. The first published threat appeared a year later. If defendants believed they had a right and intended to protect that right in the courts, they could have brought suit promptly. No reason is offered for failure to do so. Warnings to the trade and threats of legal action in good faith are not unfair. Warnings and threats made without intent to bring action, but to frighten a competitor and his customers, constitute unfair competition. Legal rights should be tested in the courts and not in the press. In the face of the notice from the defendants, plaintiffs continued to publish their self-teacher and not until a year later, after the fifth edition of plaintiffs' self-teacher had been put on the market, did defendants renew their threats, this time publicly and in such a way as well might injure the plaintiffs. Defendants did not file a counterclaim.

4. The first affirmative defense is that plaintiffs themselves are guilty of unfair competition by representing that their book is composed, authorized or approved by Culbertson. There is no evidence to this effect. The second defense is based on sections 50 and 51 of the New York Civil Rights Law. There are no facts here to which the statute could apply. (*White* v. *White*, 160 App. Div. 709.)

Defendants urge that plaintiffs are in equity with unclean hands, and, therefore, must be denied relief; that plaintiffs are selling as an exposition of the Culbertson system a book which actually does not set forth that system, or which is a misrepresentation of it, and that, therefore, they are injuring Culbertson and deceiving the public and have no standing in equity.

This defense need not be pleaded, but proof must be offered to sustain it and, where it is not pleaded, the evidence should be the more convincing, and the fraud upon which it is based clear and strictly proven. (*Fleischmann* v. *Fleischmann*, 7 App. Div. 280.)

The law with regard to this defense is well established. Intentional misrepresentations as to origin, nature or ingredients of a product, which are material and result in deception to the public, are grounds for denying relief where they are directly connected with the subject-matter of a suit. (*Hobbs* v. *Francais*, 19 How. Pr. 567; *Fetridge* v. *Wells*, 4 Abb. Pr. 144, 148; *Manhattan Medicine Co.* v. *Wood*, 108 U. S. 218; *Shaver* v. *Heller & Merz*, 108 Fed. 821, 834; *Le Blume Import Co.* v. *Coty*, 293 id. 344, 360; *Prince Mfg. Co.* v. *Prince's Metallic Paint Co.*, 135 N. Y. 24.)

In order to apply this doctrine here, it is necessary to determine what representation is made with regard to the contents of a book when the words " Culbertson System " are used in the title.

During the trial, both parties and their witnesses frequently used the term " Culbertson System " to refer to the approach-forcing system, as described in Culbertson's Contract Bridge Blue Books. In the preface of the 1933 edition, Culbertson says: " However much the yearly edition of the Blue Book may be enlarged, modified and improved *as a book*, the Culbertson System remains, with the exception of natural refinements and additions, *unchanged in its principles and essential methods.* * * * The principles that were true in 1923 must necessarily be true in 1933, and will be true in 1943." Culbertson testified as to what these basic principles are. In so far as the record defines the term " Culbertson System," it only gives its meaning as used by experts. The meaning of the term to the general bridge-playing public is not indicated. A decision as to whether or not the term is sufficiently defined in the record for the purposes of this defense, and also whether this defense

is applicable to a case involving the text matter of a book, becomes unnecessary because the evidence fails to show that the Culbertson system, as interpreted and taught in plaintiffs' book, is at variance with the principles of the Culbertson system, as set forth in Culbertson's Blue Books.

Defendants' witness, Watson, on cross-examination, agreed with the statement that " plaintiffs' publication is nothing more or less than a cleverly rearranged resume or interpretation of Mr. Culbertson's Approach Forcing System." Huske, editor of " The Bridge World," on cross-examination, said that the statement that " plaintiffs' book contains, in a short, handy, and easily-readable arrangement, or tabulation, the entire Culbertson System," was generally true.

Plaintiffs' witness, Liggett, testified that he considered plaintiffs' book " essentially an exposition of the basic principles of the Culbertson System." Plaintiffs' rebuttal witness, Smith, testified that, in his opinion, " all of the basic principles of the Culbertson System are embodied in Mr. Downes' Self-Teacher." Culbertson, himself, asked on recross-examination whether the variations in plaintiffs' book " keep this Culbertson Bridge Self-Teacher from being an exposition of the Culbertson System " answered: " No, they do not keep it from being an exposition of it."

The defense of unclean hands is not sustained and plaintiffs are entitled to an injunction restraining the defendants from representing that they have exclusive rights in the Culbertson system and that plaintiffs are violating defendants' rights and from threatening or intimidating plaintiffs' customers. The protection given by the temporary injunction which was consented to contains substantially the relief to which plaintiffs are entitled and should be made permanent, worded, however, so as to be more general in application and also so as to make it clear that defendants are entitled to use the word " authorized " but only in such a way as to indicate that their publications are authorized by Ely Culbertson.

Plaintiffs argue that defendants' unfair acts, namely, their threats and unfair claims, are ground also for forbidding defendants to use the name " Self-Teacher " and for ordering them to change the appearance of their Self-Teacher. An unfair competitor because of his fraud may be enjoined from exercising rights to which he normally would be entitled. Such restraint, however, is applied only when it is necessary for adequate protection for the injured party, because of the close relationship between the unfair acts and those which normally would be held lawful. The facts here do not warrant such a decree. The plaintiffs will be adequately protected by an injunction against the acts of the defendants which have been held to constitute unfair competition.

Defendants argue that even if a decree is granted as against " The Bridge World, Inc.," the action should be dismissed as to defendant Culbertson. Culbertson is director and president of " The Bridge World, Inc.," and through ownership of substantially all or a majority of its corporate stock owns and controls the corporation. The decree, therefore, should be against him as well as against the corporate defendant. (*Saxlehner* v. *Eisner*, 147 Fed. 189, 191.)

The record does not warrant an award of damages. In an action for unfair competition damages must be confined to losses actually suffered by the injured party by virtue of the wrongful acts of the unfair competitor. (*Allen Mfg. Co., Inc.*, v. *Smith*, 224 App. Div. 187, 193; *Underhill* v. *Schenck*, 238 N. Y. 7, 16; *Straus* v. *Notaseme Co.*, 240 U. S. 179; *Ludington Novelty Co.* v. *Leonard*, 127 Fed. 155, 157; *American Specialty Co.* v. *Collis Co.*, 235 id. 929.) The decline in the sales of plaintiffs' book after defendants began their unfair acts may have been due in whole or in part to defendants' unfair competition; it may have been due, in part, to seasonal fluctuation; it may have been the normal effect of the appearance of Culbertson's own book quite apart from any unfair acts. No evidence was offered connecting the decline in sales with the acts of the defendants. No member of the trade or public was called to testify that he would have purchased plaintiffs' book had he not been frightened or intimidated by defendants' warnings. Any decree of damages would be based upon presumptions which are not warranted. Costs should be awarded to plaintiffs.

A report will be filed in accordance with the views expressed herein. Counsel may submit findings.

It is ordered and adjudged that the defendant Ely Culbertson, his agents, servants and employees, and the defendant The Bridge World, Inc., its officers, agents, servants and employees, be and they hereby are forever enjoined and restrained:

1. From publishing or circulating any statements or advertisements or from publishing, offering for sale, selling or otherwise distributing any book, periodical or other publication containing any statement or advertisement representing directly or indirectly that the plaintiffs are not entitled to publish plaintiffs' book entitled " Contract Bridge Self Teacher; "

2. From publishing or circulating any statements or advertisements or from publishing, offering for sale, selling or otherwise distributing any book, periodical or other publication containing any statement or advertisement representing directly or indirectly

that the book published by the defendants entitled " Culbertson's Own Contract Bridge Self-Teacher " is the only authorized " Self-Teacher " on the " Culbertson Approach Forcing " system of bidding in contract bridge, provided, however, that the defendants are entitled to use the word " authorized " to indicate that their publications are authorized by Ely Culbertson;

3. From exploiting, advertising or representing, in any manner, directly or indirectly, that the defendant Ely Culbertson is the proprietor or owner of either the Approach Forcing or the Culbertson Approach Forcing or the Culbertson system or systems of bidding in contract bridge, and from publishing, printing, selling or otherwise distributing any book, periodical or other publication containing any such statement, advertisement or representation;

4. From exploiting, advertising or representing, in any manner, directly or indirectly, that any book, periodical or other publication composed, written, vended, offered for sale or otherwise distributed, is the only authorized Self-Teacher of the Culbertson system, or that the defendant Ely Culbertson is the only person authorized to compose, write, vend, offer for sale or otherwise distribute a Self-Teacher of the Culbertson system or that the defendant Ely Culbertson is the only person authorized to compose, write, vend, offer for sale or otherwise distribute any other book explaining or interpreting said system, and from publishing, printing, selling or otherwise distributing any book, periodical or other publication containing any such statement, advertisement or representation;

5. From exploiting, advertising or representing, in any manner, directly or indirectly, that the publication and sale by the plaintiffs, or either of them, of a self-teacher book or any other book explaining, teaching or interpreting the Culbertson system of bidding used in contract bridge is unauthorized, improper, unlawful, in violation of law or an infringement of the rights of the defendants or either of them, and from publishing, printing, selling or otherwise distributing any book, periodical or other publication containing any such statement, advertisement or representation.

It is further ordered and adjudged that the plaintiffs, E. Hall Downes and Bridge Publications, Inc., recover of the defendants, Ely Culbertson and The Bridge World, Inc., the sum of $1,304 costs and disbursements as taxed, and that execution herein be stayed until the expiration of thirty days from entry of this judgment and service of a copy thereof, with written notice of its entry on the attorney of record for the defendants, after which, if this judgment or any part thereof remain unpaid, the plaintiffs shall have execution for the collection thereof.